IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION



GRAND PIER CENTER LLC, et al.,           )
                                         )
            Plaintiffs,                  )       No. 03 C 7767 & No. 05 C 1156
                                         )
      v.                                 )       Judge Mark Filip
                                         )
ATC GROUP SERVICES, INC., et al.,        )
                                         )
            Defendants.                  )

**MEMORANDUM OPINION AND ORDER DENYING THE SUMMARY JUDGMENT
MOTION OF DEFENDANT ATC GROUP SERVICES, INC.**

This case involves an inter-corporate dispute concerning, *inter alia*, bankruptcy and

environmental issues. Plaintiff, Grand Pier Center LLC ("Grand Pier" or "Plaintiff"), filed this

action against ATC Group Services, Inc. (also, "ATC"). (D.E. 75-3; D.E. 7 in Case No. 05 C

1156.) This case has been consolidated with another suit (Case No. 03 C 7767) that Grand Pier

filed against different defendants who are not parties to this motion or otherwise discussed in this

order. (D.E. 27.) All docket entries hereinafter will refer to Case No. 03 C 7767. ATC has

moved for summary judgment, a finding of contempt, the imposition of sanctions, and the award

of costs and fees. (D.E. 73.) For the following reasons, ATC's motion is respectfully denied.

RELEVANT FACTS

The relevant facts are taken from the parties' Local Rule 56.1 statements of facts and

related exhibits. Local Rule 56.1 requires that statements of facts contain allegations of material

fact, and those factual allegations must be supported by admissible record evidence. *See* L.R.

56.1; *Malec v. Sanford*, 191 F.R.D. 581, 583-85 (N.D. Ill. 2000). In addition, allegations from

Grand Pier's Amended Complaint ("Complaint") are sometimes included to provide context,

although those assertions are not material to the disposition of the summary judgment motion.

Grand Pier is suing for losses it suffered from the failure of a real estate project (at a location known as the "RV3 Site") which was caused by the presence of radioactive thorium contamination that ATC allegedly failed to investigate or disclose. (D.E. 75-3 ¶ 2; D.E. 113 at 1-2.) Grand Pier alleges that in September of 1997, ATC issued a Phase II Subsurface Investigation Report which evaluated the environmental conditions at the RV3 Site. (D.E. 97 ¶¶ 13-14.) After reviewing the information ATC had gathered, Grand Pier purchased the RV3 Site. (*Id.* ¶ 14.) Grand Pier further alleges that ATC had not in fact investigated any of the RV3 Site subsurface conditions for thorium contamination. (*Id.* ¶ 16.)

According to Grand Pier, ATC and its predecessors performed environmental consulting work at the RV3 Site between May 1991 and July 1999, resulting in at least nine separate environmental reports, none of which made any reference to "ATC Group Services, Inc." (D.E. 101 ¶ 7[1]; D.E. 97-2 ¶ 5.) Each and every invoice from ATC and its predecessor for work at the Site referenced only "ATC Associates, Inc.," as the vendor, and none made any reference whatsoever to "ATC Group Services, Inc." (D.E. 101 ¶ 8; D.E. 97-2 ¶ 6.) Grand Pier states that it had no reason to believe that ATC Associates, Inc., was related to "ATC Group Services, Inc.," and that ATC Associates, Inc., never held itself out as affiliated with "ATC Group Services, Inc." (D.E. 101 ¶ 9; D.E. 97-2 ¶ 7.) The final report submitted by ATC Associates, Inc., regarding the subsurface soil conditions at the RV3 Site is a Phase II Environmental Assessment Report dated

---

[1] Defendant attempts to contest Grand Pier's factual showing on this point, but ATC simply offers an unsworn denial in its Rule 56.1 response. (See D.E. 101 ¶ 7.) This is inadequate under the local rules and well-settled caselaw applying them. *See, e.g., Malec v. Sanford*, 191 F.R.D. 581, 584 (N.D. Ill. 2000). Accordingly, for purposes of this opinion, the Court accepts as true Grand Pier's effectively-uncontested factual assertions of this type. *Id.*

July 8, 1999. (D.E. 101 ¶ 10; D.E. 97-2 ¶ 8.) Grand Pier's claims are based on alleged misrepresentations and negligence in and concerning these environmental assessments. (D.E. 75-3 ¶¶ 27-44.)

On July 26, 1999, ATC Group Services, Inc., filed a voluntary petition for relief under Chapter 11 of the United States Bankruptcy Code in the Southern District of New York. (D.E. 97 ¶ 18; D.E. 75-5 at 1.) The bankruptcy petition included "ATC Associates, Inc." as a name "used by the Debtor in the last 6 years." (*Id.*) On the same day, Acquisition Holdings, Inc., ATC New England Corp., Hygenia Laboratories, Inc., ATC InSys Technology, Inc., ATC Environmental, Inc., ATC Construction Services, Inc., and Bing Yen & Associates, Inc., simultaneously filed voluntary chapter 11 petitions in the Southern District of New York. (D.E. 97 ¶ 19; D.E. 75-5 at 3 (listing affiliated debtors of ATC Group Services, Inc., filing voluntary chapter 11 petitions).) The bankruptcy court entered an order directing the joint administration of the eight pending Chapter 11 cases "solely for procedural purposes." (D.E. 97 ¶ 20; D.E. 75-6.) The joint caption identifies the debtors as "In re ATC Group Services, Inc.," and indicates that the eight cases will be jointly administered, but it makes no mention of "ATC Associates, Inc." (*Id.*)

On July 30, 1999, the bankruptcy court entered an order requiring all persons or entities with claims arising prior to the petition date of July 26, 1999, to file claims against the appropriate debtors by September 17, 1999. (D.E. 97 ¶ 21; D.E. 75-7 at 2.) The order further required debtors to publish a copy of the Notice of the Bar Date for pre-petition claims, the form of which was approved by the Court, in the national editions of the Wall Street Journal and the New York Times. (D.E. 97 ¶ 22; D.E. 75-7 at 5.) Notice of the Bar Date was published in the

3

New York Times and the Wall Street Journal on August 16, 1999. (D.E. 97 ¶ 23; D.E. 75-8.)

On February 14, 2000, the debtors filed their Fourth Amended Joint Consolidated Plan of

Reorganization. (D.E. 97 ¶ 24.) On February 15, 2000, the bankruptcy court approved the

Debtors' Fourth Amended Disclosure Statement and entered an order requiring notice of the

Confirmation Hearing to be published in the national editions of the Wall Street Journal and the

New York Times. (*Id.* ¶ 25.) Notice of the Confirmation Hearing was published in the national

editions of the Wall Street Journal and New York Times on February 24, 2000. (*Id.* ¶ 26.) An

order was entered by the Bankruptcy Court on March 31, 2000, which confirmed the Debtors'

Fourth Amended Joint Consolidated Plan of Reorganization (the "Plan"). (*Id.* ¶ 27.) The Plan

became effective on April 27, 2000. (*Id.* ¶ 28.)

Paragraph 9.2 of the Plan provides that "[e]xcept as otherwise expressly provided in

section 1141 and 1144 of the Bankruptcy Code or the Plan, the distributions made pursuant to

and in accordance with the applicable terms and conditions of the Plan are in full and final

satisfaction, settlement, release and discharge as against the Debtors of any debt that arose before

the Effective Date . . . ." (*Id.* ¶ 29; D.E. 75-13 ¶ 9.2.) Paragraph 47 of the Order Confirming the

Plan states that the payments, distributions, and other treatment afforded under the Plan shall be

in full and final satisfaction, settlement, discharge, and release of all claims of any nature

whatsoever against the debtors. (*Id.* ¶ 30.) Paragraph 47 further states that all persons shall be

precluded from asserting against the Reorganized Debtors, their successors, or assets, any other

or further claims based upon any act or omission, transaction or other activity of any kind or

nature that occurred prior to the Confirmation Date. (*Id.* ¶ 31.) Paragraph 48 states that all

entities that have held, hold or may hold claims against any of the debtors are permanently

4

enjoined from commencing or continuing any action with respect to such claims. (*Id.* ¶ 32.) On June 25, 2004, the Bankruptcy Court entered the final decree closing the Chapter 11 cases of the debtors. (*Id.* ¶ 33.) All of the actions and inactions alleged in the Complaint were performed by ATC before the effective date of the plan. (*Id.* ¶ 34.)

After the initial petition for bankruptcy, all subsequent bankruptcy filings tendered to the bankruptcy court, as well as the notice of the bar date and notice of confirmation date published in the New York Times and the Wall Street Journal, did not name or mention "ATC Associates, Inc"—whether in the caption or the text of such filings or notices. (D.E. 101 ¶¶ 1-3.) According to Grand Pier, it did not receive any actual notice of the bankruptcy proceedings detailed above, and ATC does not claim to have provided any notice except for general publication notice. (D.E. 101 ¶¶ 4-6.) As explained, all of the invoices Grand Pier received from ATC Associates, Inc., for work at the RV3 Site referenced only ATC Associates, Inc., as the vendor, and none made any reference to "ATC Group Services, Inc." (*Id.* ¶¶ 7-9.) Grand Pier states that it first learned of ATC Associates, Inc.'s potential Chapter 11 bankruptcy status from ATC Group Services' in-house counsel, after Grand Pier's present lawsuit had been filed. (D.E. 101 ¶ 13; D.E. 97-2 ¶ 11.)

## LEGAL STANDARD

Summary judgment is proper where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The nonmovant cannot rest on the pleadings alone, but must identify specific facts, *see Cornfield v. Consol. High Sch. Dist. No. 230*, 991 F.2d 1316,

1320 (7th Cir. 1993), that raise more than a scintilla of evidence to show a genuine triable issue

of material fact. *See Murphy v. ITT Educ. Servs., Inc.,* 176 F.3d 934, 936 (7th Cir. 1999)

(citation omitted). The Court views the properly presented record and all reasonable inferences

drawn therefrom in the light most favorable to the nonmovant. *See* Fed. R. Civ. P. 56(c); *Foley

v. City of Lafayette,* 359 F.3d 925, 928 (7th Cir. 2004).

DISCUSSION

I.    ATC Has Not Demonstrated that Grand Pier's Claim Was Discharged in the Bankruptcy
      Proceeding

Grand Pier does not dispute that its claim against ATC Associates, Inc., arose before

ATC's petition for bankruptcy. Therefore, Grand Pier is considered a "creditor" for bankruptcy

purposes. *See Fogel v. Zell,* 221 F.3d 955, 960 (7th Cir. 2000) (collecting authorities).

"Under the Bankruptcy Code, a debtor is generally discharged from any debt [to a

creditor] that arose prior to the bankruptcy court's confirmation of the debtor's proposed

liquidation or reorganization plan." *In re J.A. Jones, Inc.,* 492 F.3d 242, 249 (4th Cir. 2007)

(citing 11 U.S.C. § 1141(d)). However, as *In re Banks,* 229 F.3d 296 (4th Cir. 2002), explained,

a binding discharge in bankruptcy against a putative suitor necessarily requires that the suitor has

been afforded due process in connection with the bar on any claims. Specifically, *In re Banks,*

stated:

> We agree a bankruptcy court confirmation order generally is afforded a preclusive effect.
> But we cannot defer to such an order if it would result in a denial of due process in
> violation of the Fifth Amendment to the United States Constitution. Where the
> Bankruptcy Code and Bankruptcy Rules specify the notice required prior to the entry of
> an order, due process generally entitles a party to receive the notice specified before an
> order binding the party will be afforded preclusive effect.

*Id.* at 302 (citing, *inter alia, Mullane v. Central Hanover Bank and Trust,* 339 U.S. 306, 314

6

(1950)); *accord In re Hanson*, 397 F.3d 482, 487 (7th Cir. 2005) (similar); *Chemetron Corp. v. Jones*, 72 F.3d 341, 346 (3rd Cir. 1995) ("Inadequate notice is a defect which precludes discharge of a claim in bankruptcy."); *Reliable Elec. Co. v. Olson Construction Co.*, 726 F.2d 620, 623 (10th Cir. 1984) ("[W]e hold that notwithstanding the language of section 1141 [of the Bankruptcy Code, which provides for discharge under a confirmed plan], the discharge of a claim without reasonable notice of the confirmation hearing is violative of the fifth amendment to the United States Constitution.") (collecting Supreme Court and circuit court precedent, including *Mullane, supra,* and *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 297 (1953)).[2]

It is well-settled that a debtor who files for bankruptcy protection must give notice that is reasonably calculated under the totality of circumstances presented to apprise potential creditors of the pendency of the bankruptcy case. *See, e.g., In re Envirodyne Indus., Inc.*, 214 B.R. 338, 347-48 (N.D. Ill. 1997) (citing, *inter alia, Mullane*, 339 U.S. at 314). Both precedent and the Bankruptcy Code reflect that actual notice to every potential creditor is not required to satisfy the demands of the Bankruptcy Code or the Constitution. In this regard, for example, publication notice (as opposed to actual notice) is sufficient for unknown creditors—at least assuming, as discussed below, that the publication notice is effected in a manner that is sufficiently clear and

---

[2] *See also, e.g., Solow Building Co., LLC v. ATC Associates, Inc.*, 175 F. Supp. 2d 465, 471 (E.D.N.Y. 2001) ("[D]ischarge under the Bankruptcy Code, presumes that all creditors bound by the plan have been given notice sufficient to satisfy due process. Inadequate notice is a defect which precludes discharge of a claim in bankruptcy.") (internal quotation marks and citations omitted); *In re Arch Wireless*, 332 B.R. 241, 251 (Bankr. D. Mass. 2005) ("[I]f a creditor is not given adequate notice of the bar date for filing claims, the hearing on plan confirmation, or the order confirming a plan in a Chapter 11 case, the creditor may not be bound by the plan's provisions and its claim is not discharged.") (collecting numerous cases, including circuit court caselaw).

comprehensive. *See Fogel*, 221 F.3d at 962-63 ("Fair or adequate notice has two basic elements: content and delivery. If the notice is unclear, the fact that it was received will not make it adequate.") (collecting authorities). The law will not require actual notice to each and every potential creditor because, for example, it may not be practicable to identify all possible creditors, so as potentially even to be able to provide actual notice. In the instant context, the Federal Rules of Bankruptcy Procedure set forth the required manner of providing notice, as discussed further below. *See* Fed. R. Bankr. P. 1005, 2002(n); *see also* 11 U.S.C. § 342. It is the debtor's burden to ensure that all creditors have been properly notified in accordance with these requirements. *See, e.g., In re Anderson*, 159 B.R. 830, 837 (Bankr. N.D. Ill. 1993) ("The burden is on Debtor to insure that all creditors have been properly notified.") (citation omitted).

A.    ATC Has Not Demonstrated That Grand Pier Was An Unknown Creditor

An important threshold issue is whether Grand Pier was a "known" versus "unknown" creditor. In deciding what notice is necessary, courts usually divide creditors into "known" and "unknown" creditors. *See, e.g., Fogel*, 221 F.3d at 963. An "unknown" creditor "is a claimant whose identity or claim is wholly conjectural or whose interest or whereabouts could not with due diligence be ascertained by the debtor." *See In re J.A. Jones, Inc.*, 492 F.3d at 250 (collecting cases; internal quotation marks and footnote omitted); *accord, e.g., Solow Building*, 175 F. Supp. 2d at 471 (collecting cases). Precedent teaches that a creditor is "ascertainable," for notice purposes, if that creditor can be discovered through "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams*, 462 U.S. 791, 798 n.4 (1983); *accord, e.g., Solow Building*, 175 F. Supp. 2d at 471. Precedent teaches that "reasonable diligence," as one naturally would expect, does not require "impracticable and extended searches," *Mullane*, 339 U.S. at 317, and

8

what is reasonable depends on the facts of each case. *Id.* at 314-15. Nonetheless, substantial federal appellate authority instructs that a debtor must engage in a meaningful search of its own books and records, and that claimants who are "reasonably ascertainable" through such a search are considered "known" creditors. *See, e.g., In re J.A. Jones, Inc.*, 492 F.3d at 250 (citing *Chemetron Corp.*, 72 F.3d at 346); *In re Crystal Oil Co.*, 158 F.3d 291, 297 (5th Cir. 1998) (collecting appellate authority)).

The distinction between an "unknown" and a "known" creditor is significant. For an unknown creditor, appropriate publication notice "can suffice." *Tulsa Professional Collections Servs., Inc. v. Pope*, 485 U.S. 478, 490 (1988). In contrast, for a known or "reasonably ascertainable" creditor, means reasonably calculated to provide actual notice (such as notice by mail) are typically required. *Id.*

In this regard, the Court notes that precedent does not accept the sufficiency of publication notice for unknown creditors because of any irrational optimism—or even any particular confidence—about the likelihood that such publication will apprise a potential unknown creditor about the putative loss of a pre-petition property right against the debtor. To the contrary, Supreme Court precedent has long acknowledged that publication notice is, at most, a second-best approach. *See Tulsa*, 485 U.S. at 489 ("As the Court noted in *Mullane*, 'chance alone brings to the attention of even a local resident an advertisement in small type inserted in the back pages of a newspaper.'") (quoting *Mullane*, 339 U.S. at 315); *City of New York*, 344 U.S. at 296 ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best."). Nonetheless, our legal system and Bankruptcy Code reflect a broad consensus that the possibility of a fresh start under Chapter 11—including, of

9

particular relevance for present purposes, a corporate reorganization under Chapter 11—is a positive thing. In addition, for any sophisticated or large-scale employer to effect a Chapter 11 reorganization, and thereby to preserve the going-concern economic value and jobs that such reorganizations ideally provide for the economy as a whole, creditors, and the work force, a requirement of actual notice to all putative creditors is simply impracticable. *See generally, e.g.*, *Mullane*, 339 U.S. at 317 ("This Court has not hesitated to approve of resort to publication as a customary substitute . . . where it is not reasonably possible or practicable to give more adequate warning. Thus it has been recognized that, in the case of persons missing or unknown, employment of an indirect and even a probably futile means of notification [via publication] is all that the situation permits and creates no constitutional bar to a final decree foreclosing their rights."). As a result, publication notice, at least where competently and sensibly effected, can suffice.

The first reason summary judgment must be denied in this case is because ATC has not shown, through unrefuted and appropriately supported factual contentions, that Grand Pier was not a "known" or reasonably ascertainable creditor.[3] In support of its contention that publication was an adequate means of providing notice of its bankruptcy, ATC simply argues—without any appropriate evidentiary support, much less uncontroverted evidence— that Grand Pier was an unknown creditor because ATC "had never been notified prior to the filing of the bankruptcy petition that Plaintiffs asserted claims against it." (D.E. 75 at 9.) ATC claims in its brief to have

---

[3] Such a creditor is typically owed a reasonable attempt at the provision of actual notice—at least, for example, where there is not a plethora of *de minimis* claims, such that the costs of attempting actual notice, like the cost of a postage stamp, might exceed the amount of the claim at issue. No one contends that an attempt at actual notice to Grand Pier was made here.

first learned of the claim when the instant suit was filed in 2005. (*See id.*; D.E. 100 at 3.) However, as Grand Pier explains (*see* D.E. 96 at 10), ATC offers no actual evidence in its moving papers in support of its assertions that Grand Pier was an unknown creditor, and given that the burden of showing the propriety of summary judgment falls on the movant, ATC's unsworn assertions are inadequate.

Grand Pier points out that ATC's final Subsurface Report for Grand Pier was dated July 8, 1999, which was eighteen days before ATC filed its bankruptcy petition. (D.E. 96 at 12; D.E. 75 at 2; D.E. 97-2 ¶ 8.) Grand Pier argues from this that the information needed to notify Grand Pier of the bankruptcy therefore was "easily ascertainable." (D.E. 96 at 12.) With all respect, this contention is seemingly overstated: the completion of the July 8, 1999 Subsurface Report for Grand Pier does not demonstrate that Grand Pier was a known *creditor*, because there is no evidence that ATC knew that Grand Pier might have a claim based on this report. Nonetheless, the thorium contamination was discovered on February 29, 2000 (D.E. 101 ¶ 12), about one month before plan confirmation and some two months before ATC's bankruptcy plan became effective. (D.E. 97 ¶¶ 27-28.) The record is unclear as to whether ATC knew about the contamination or Grand Pier's potential claim during the pendency of its bankruptcy, but Grand Pier has introduced evidence that the discovery of the thorium was a substantial and well-publicized event in the Chicago commercial and news worlds. (*See, e.g.*, D.E. 22 at 2 and exhibits discussed therein.).

To be sure, the fact that an event was well-publicized in leading Chicago newspapers does not conclusively prove that a debtor became aware of it, or prove that a debtor would reasonably appreciate that the discovery of substantial environmental contamination on a large

11

commercial real estate development site would provide a reasonable basis to conclude that there was a non-conjectural claim against a debtor concerning that environmental discovery. The entire subject has been, with all respect, the subject of minimalist briefing in the summary judgment process, and the Court offers no conclusive assessments or even tentative speculations about such issues. Nonetheless, nothing has been adduced by ATC to eliminate the possibility that a factfinder could conclude that the discovery of serious environmental contamination at a large commercial real estate development would prompt a debtor to appreciate that a party like Grand Pier would have a likely claim against an entity like "ATC Associates, Inc."—particularly given that ATC Associates, Inc., had been hired to investigate and report on such environmental issues. Again, the procedural posture of the case is important: ATC is seeking summary adjudication of Grand Pier's claim, and under the applicable summary judgment standards, ATC has not satisfied its burden on the issue of whether Grand Pier was an "unknown," as opposed to a "known" or "reasonably ascertainable," creditor.

Before concluding on this issue, the Court notes that ATC is certainly correct that debtors are not required to provide actual notice to everyone with whom they have previously done business. *See Environdyne*, 214 B.R. at 348 ("A debtor does not have the duty to search out each conceivable or possible creditor and urge that person or entity to make a claim against it.") (internal quotation marks and citations omitted); *accord In re U.S.H. Corp. of New York*, 223 B.R. 654, 659 (Bankr. S.D.N.Y. 1998) ("Debtors cannot be required to provide actual notice to anyone who potentially could have been affected by their actions; such a requirement would completely vitiate the important goal of prompt and effectual administration and settlement of debtors' estates."). But ATC's "proving" of that truism is not dispositive of the issues at hand.

12

The record here does not fairly allow any conclusion that Grand Pier was an "unknown creditor" under the standards prescribed by Fed. R. Civ. P. 56 and Local Rule 56.1. In addition, it is also undisputed that no attempt was made to give actual notice to Grand Pier. Under those circumstances, summary judgment in favor of ATC is inappropriate.

      B.     Even if Grand Pier Were Conclusively Shown to Be an "Unknown" Creditor, ATC Failed to Provide Appropriate Notice in Accordance with the Bankruptcy Rules

Bankruptcy Rule 1005 states: "The caption of a petition commencing a case under the [Bankruptcy] Code shall contain . . . the title of the case . . . . The title of the case shall include . . . all other names used within six years before filing the petition." Fed. R. Bankr. P. 1005. In this regard, the Advisory Committee Note specifically states that "[a]dditional names of the debtor are also required to appear in the caption of each notice to creditors." Fed. R. Bankr. P. 1005, Notes of the Advisory Committee[4]; *In re Friedman*, 184 B.R. 883, 888 (Bankr. N.D.N.Y. 1994), *aff'd* 184 B.R. 890 (N.D.N.Y. 1995). Moreover, Rule 2002(n) provides that "[t]he caption of every notice . . . shall comply with Rule 1005." Fed. R. Bankr. P. 2002(n). As caselaw acknowledges, "accuracy of the caption is of substantive importance in bankruptcy cases. It is the caption which informs creditors of exactly who has commenced a bankruptcy case so that the creditor has an opportunity to determine whether they have a claim against the debtor's estate." *In re AM Int'l, Inc.*, 142 B.R. 252, 256 (Bankr. N.D. Ill. 1992) (internal quotation marks and citations omitted); *accord, e.g., In re Anderson*, 159 B.R. 830, 838 (Bankr. N.D. Ill. 1993)

---

[4] Precedent teaches that a court appropriately considers the Notes of the Advisory Committee on Bankruptcy Rules when interpreting those rules. *See In re Fesco Plastics Corp., Inc.*, 908 F.2d 240, 242-43 (7th Cir. 1990) (citing, *inter alia, Mississippi Publishing Corp. v. Murphree*, 326 U.S. 438, 444 (1946)); *accord, e.g., Schiavone v. Fortune*, 477 U.S. 21, 31 (1986) (citing *Murphree*, 326 U.S. at 444).

13

(citation omitted). For this reason, the caption requirements of Rule 1005 "are strictly enforced by bankruptcy courts." *In re AM Int'l*, 142 B.R. at 256.

Precedent instructs that notice to creditors which fails to comply with the Bankruptcy Rules is insufficient to preclude post-bankruptcy claims by those creditors. *See In re Hanson*, 397 F.3d 482, 487 (7th Cir. 2005) (stating that, "where the Bankruptcy Code and Bankruptcy Rules require a heightened degree of notice, due process entitles a party to receive such notice before an order binding the party will be afforded preclusive effect") (citation omitted); *In re Banks*, 299 F.3d 296, 302 (4th Cir. 2002) ("Where the Bankruptcy Code and Bankruptcy Rules specify the notice required prior to entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive effect.").[5] Because, as explained below, the publication notice in this case was inadequate as to

---

[5] The Court notes that at least one court has cautioned that one should not understand any and every failure to abide by the requirements of the Bankruptcy Rules as constituting a constitutional due process violation. *See In re Arch Wireless*, 332 B.R. 241, 252 (Bankr. D. Mass. 2005) (stating that failure to comply with the Bankruptcy Rules "does not . . . necessarily mean that constitutional standards for due process have been left unsatisfied. . . . [but] [b]ecause the notice requirements under the Bankruptcy Rules are designed to provide procedurally adequate notice . . . debtors disregard them at their peril.") (collecting cases). To be sure, one would be reluctant to suggest that any and every procedure set forth in the current version of the Bankruptcy Rules is constitutionally required, or to read caselaw like *In re Hanson*, *supra*, and *In re Banks*, *supra* (both cited immediately above in the text), to mandate than any and every minor rules violation by definition is an error of constitutional magnitude. *See, e.g., Sierra Resources, Inc. v. Herman*, 213 F.3d 989, 992 (7th Cir. 2000) ("Sierra's argument seems to assume that for every statutory or regulatory violation of a procedural nature there must necessarily be a due process violation at a Constitutional level, a contention that is without any basis in the law.") (collecting numerous cases); *see also, e.g.*, Bankr. Rule 9005 (specifying that Fed. R. Civ. P. 61, concerning the treatment of harmless error, "applies in cases under the [Bankruptcy] Code."). Nonetheless, even if one assumes that some errors legitimately can be harmless with respect to the Bankruptcy Code (as they are with respect to the federal criminal and civil codes of procedure, for example), ATC does not advance any harmless error argument here. Moreover, the Court would be most reluctant to find error of the sort to have occurred here concerning the notice to be harmless. Under the record presented, if Grand Pier was an unknown creditor, it

an unknown creditor—as ATC unsuccessfully urged Grand Pier was for summary judgment purposes, but as the Court will now assume *arguendo* regarding Grand Pier for the analysis to follow—summary judgment is independently precluded on this basis.

In the initial bankruptcy petition, ATC listed "ATC Associates, Inc." as one of the several names it had used in the last six years. (D.E. 97 ¶ 18.) However, ATC failed to list that name anywhere in any of the subsequent filings, including, most significantly for present purposes, in the caption or text of its publication notices. (D.E. 101 ¶¶ 1-3.) Therefore, ATC failed to comply with Rule 2002(n), which dictates that the caption of the notice sent to creditors must comply with Rule 1005 by including "all other names used within six years before filing the petition." Fed. R. Bankr. P. 1005; *see also* Fed. R. Bankr. P. 1005, Notes of the Advisory Committee (specifying that "[a]dditional names of the debtor are also required to appear in the caption of each notice to creditors.").

In attempting to escape the consequences of this defect, ATC argues that Grand Pier sued ATC Group Services, Inc., in this litigation, (D.E. 1 in Case No. 05 C 1156), so Grand Pier supposedly cannot claim that it had no reason to believe that "ATC Group Services, Inc." was

---

seemingly had no notice via the publication notices that its claim against "ATC Associates, Inc." (*i.e.*, the only name provided by the entity it had ever done business with), was subject to an upcoming putative bar date via the bankruptcy proceedings ongoing in New York City. As explained elsewhere, the Supreme Court has been quite candid in recognizing that publication notice is of relatively limited utility in at least some instances. *See, e.g.*, *City of New York v. New York, New Haven & Hartford R.R. Co.*, 344 U.S. 293, 296 (1953) ("Notice by publication is a poor and sometimes a hopeless substitute for actual service of notice. Its justification is difficult at best."). The law accepts the use of publication notice—for example, concerning unknown creditors—because otherwise there would be no way to effect corporate reorganizations and achieve the benefits they have been determined to offer. Nonetheless, ATC offers no authority to suggest that a publication notice as defective as the one employed here is sufficient to discharge a claim against an unknown creditor.

15

related to "ATC Associates, Inc." (D.E. 100 at 5.) This argument is, with all respect,
unpersuasive: the instant suit only demonstrates that Grand Pier knew of the existence of ATC
Group Services, Inc., on February 25, 2005, the time it filed its first complaint. (D.E. 1 in Case
No. 05 C 1156.) It does not establish that Grand Pier knew of ATC Group Services, Inc.'s
affiliation with "ATC Associates, Inc.," at the time of the bankruptcy. To the contrary, the
evidence in the record, when evaluated under applicable Local Rule 56.1 standards, reflects that
the invoices Grand Pier received for the relevant environmental assessment services referred only
to "ATC Associates, Inc." as the vendor, and that Grand Pier had no reason to believe that "ATC
Associates, Inc." was affiliated with "ATC Group Services, Inc." (D.E. 101 ¶¶ 6-9; D.E. 97 SAF
¶¶ 6-9.)

In a similar case from the bankruptcy court in this district, a creditor named Wella
Corporation purchased a manufacturing facility from a debtor then known as the Addressograph-
Multigraph Corporation. *In re AM Int'l, Inc.*, 142 B.R. at 253. That debtor subsequently
changed its name to AM International, Inc. ("AMI"). *Id.* AMI filed for bankruptcy three years
later, and published its notice of bar date in the Wall Street Journal with the caption: "AM
International, Inc, a Delaware Corporation, Debtor." *Id.* After the bankruptcy process was
completed, Wella discovered hazardous waste at the site it had purchased from the debtor under
its original name, the Addressograph-Multigraph Corporation, and sued. *Id.* at 254. The
bankruptcy court, proceeding on the assumption that Wella was an unknown creditor, held that
because the caption of the publication notice failed to include other names used by AMI within
six years before filing the petition—which was required by then-Interim Bankruptcy Rules 1005
and 2002(c)—notice was defective and Wella's claim had not been discharged. *Id.* at 255-57.

16

The same result follows from the facts of this case.

ATC makes a series of arguments as to why its publication notice was sufficient, but none of these arguments persuades the Court to depart from the holding of *AM International*. In this regard, ATC first argues that it complied with Rule 1005 because the petition commencing the bankruptcy included ATC Associates, Inc., in the caption. (D.E. 100 at 6.) However, this does not mean that ATC complied with Rule 2002(n), which requires that the captions of notices (and not just the intial petition) comply with Rule 1005 by listing names used in the last six years. *Accord* Fed. R. Bankr. P. 1005, Notes of the Advisory Committee (specifying that, "[a]dditional names of the debtor are also required to appear in the caption of each notice to creditors."). The bankruptcy petition could not have provided Grand Pier with notice unless Grand Pier had been searching through bankruptcy court filings[6] looking for debtors it might have claims against.

---

[6] The bankruptcy filings at issue were made in a different place (indeed, in a different time zone) than the location of relevant real estate site and the environmental assessment work performed on it. In this case, the two locations involved were major metropolitan cities (New York and Chicago, respectively), but it is not even clear that this factor helps ATC. There are more, not less, corporate bankruptcies filed in a place like New York City than in rural judicial districts, and thus the putative burden on an unknown creditor like Grand Pier under the search-duty regime ATC proposes would be, if anything, greater and not less. Moreover, to the extent ATC's theory is adopted, one presumably would need to accept the proposition that Grand Pier could have learned of the bankruptcy affecting "ATC Associates, Inc.," which was listed only on the initial bankruptcy filing as a recent d/b/a for "ATC Group Services, Inc.," regardless of where the initial filing was made. If that is correct, then the search burden on an unknown creditor like Grand Pier expands to a nation's worth of corporate bankruptcy petitions. That rule hardly seems sensible, particularly given that a readily available alternative—*i.e.*, having the corporate debtor simply include its recent d/b/a names in its notices to creditors—is (1) prescribed by Bankruptcy Rules and Notes of the Advisory Committee; and (2) places the burden concerning d/b/a/ notices on the party (*i.e.*, the reorganizing corporate petitioner) who has the most readily available information on the subject. Finally, in this regard, the Court notes that bankruptcy law generally is reluctant to impose search costs on a putative creditor; thus, for a known creditor, the debtor is not relieved of the consequences of a failure to attempt actual notice, even if that known creditor comes through other means to receive *actual knowledge* of ongoing bankruptcy proceedings that might affect the known creditor's rights. *See, e.g., Reliable Electric Co. v. Olson Construction*

17

Although the possibility that Grand Pier would have run across the name of ATC Associates, Inc., in the newspaper is also somewhat improbable, *see, e.g., Mullane*, 339 U.S. at 315, publication notice is the established method of satisfying due process considerations when providing notice to unknown creditors. *See City of New York*, 344 U.S. at 296. Put differently, while publication notice sometimes may provide a reasonably poor chance that an unknown creditor will receive actual notice that its property rights may be extinguished in ongoing bankruptcy proceedings—*see, e.g., id.*—that unknown creditor is at least entitled to get a meaningful shot at learning of the bankruptcy proceedings through a publication notice that meaningfully identifies the entity with which it dealt. ATC failed to comply with the Bankruptcy Rules in providing publication notice, and its simple compliance with Rule 1005 in filing the intial petition does not absolve it from this failure.

ATC also argues that the name ATC Associates, Inc., "is substantially similar to the names of the other ATC entities listed in the caption such that a reasonable person would have

---

*Co.*, 726 F.2d 620, 622 (10th Cir. 1984) ("As specifically applied to bankruptcy reorganization proceedings, the [Supreme] Court has held that a creditor, who has general knowledge of a debtor's reorganization proceeding, has no duty to inquire about further court action. The creditor has the right to assume that he will receive all of the notices required by statute before his claim is forever barred.") (collecting cases, including *New York v. New York, New Haven & Hartford R.R. Co.*, 344, 293, 297 (1953); internal quotation marks omitted); *In re Harbor Tank Storage Co.*, 385 F.2d 111, 115 (3rd Cir. 1967); *In re Arch Wireless*, 332 B.R. 241, 252-53 (Bankr. D. Mass. 2005). To be sure, a careful reading of cases like *Reliable* reveals that the cases were speaking in the context of known creditors who failed to receive formal notice, and the Court does not believe that *Reliable* and related cases themselves command the outcome reached here. Nonetheless, it would be anomalous to adopt ATC's argument that Grand Pier, a putatively unknown creditor, in the wake of a defective public notice, should have been required to search court files to find a bankruptcy petition, which alone revealed that "ATC Associates, Inc." was a d/b/a name used by the Reorganizing Debtors within the last six years, given that it is settled that a known creditor who receives *actual knowledge* of bankruptcy proceedings has no duty to inquire or file a claim unless actual notice is afforded in conformity with the Bankruptcy Rules.

18

made the connection." (D.E. 100 at 5.) ATC is referring to bankruptcy filings that included the

names ATC Group Services, Inc., ATC New England Corp., ATC InSys Technology, Inc., ATC

Environmental, Inc., and ATC Construction Services, Inc. (D.E. 75-8; D.E. 75-19.) However,

the similarity of the names does not excuse ATC's failure to comply with the caption

requirements. *See In the Matter of Sleepy Giant, Inc.*, 120 B.R. 6, 7-8 (Bankr. D. Conn. 1990)

(where debtor named "Sleepy Giant, Inc." failed to include its previous name, "Original Sleepy

Giant, Inc." on its notice, creditor was excused for not filing proof of claim before the bar date);

*In re Gamble*, 85 B.R. 150, 151 (Bankr. N.D. Ala. 1988) (where notice of Chapter 13 bankruptcy

listed debtor as "Eula Kyle Gamble," creditor did not receive adequate notice of debt under the

name "Eula M. Kyle"). Since the burden is on ATC to provide the correct notice, and the

Bankruptcy Rules in this regard are strictly enforced, the similarly of the names does not make

notice adequate. *See AM Int'l*, 142 B.R. at 256 (stating, in a case involving a putative unknown

creditor, that "the adoption of a 'should have known' standard of knowledge to determine

adequacy of notice would redistribute the duties of the creditor and debtor set by the Supreme

Court in [*City of New York*]."); *see also id.* at 257 ("Adopting a 'should have known' standard

would excuse noncompliance with the Bankruptcy Rules and burden Wella [the unknown

creditor] with making the connection between AM International, Inc. and Addressograph-

Multigraph Corporation when . . . [the Bankruptcy Rules] . . . have already placed that duty on

AMI.").

Before moving on, it is worth pausing to note that ATC's proposed "creditor's duty to

inquire" regime for unknown creditors is—in addition to being, at least in this Court's opinion,

inconsistent with the Bankruptcy Rule's prescribed notice system—not particularly practical

19

either when evaluated against contemporary legal practice. Corporate reorganizations of course come in different shapes and sizes. However, many of the most important ones involve very large corporate entities, with dozens or perhaps even hundreds of affiliated corporations and entities also filing for reorganization. In such settings, it is commonplace for a large corporation to place some, but not all, of its subsidiaries or affiliated entities into the consolidated reorganization. The decision whether to place any given entity into the reorganization is the subject of thoughtful analysis by both businesspersons and their legal counsel. Two subsidiaries might be analogous in many respects, but one will be withheld from the reorganization because it is, for example, meaningfully involved in government contracting work (where a bankrupt entity may be precluded from competing, for example, for public works projects), or because the entity is heavily involved in foreign commerce, where the perception of a corporate reorganization may be more negative than it generally is domestically. At times, the hope of withholding a particular corporate entity from the reorganization for such reasons cannot be realized; for example, if it has provided certain loan guarantees for entities that must be reorganized. The bottom line, however, is that if an unknown creditor heard generically that "ACME International Co." were going into a Chapter 11 reorganization, that would not be a reliable signal to expect that "ACME International Services Co.," or "ACME International Widgets Co.," or "ACME International Co. (Canada)," or "ACME International Government Contracting Co." were part of the reorganization. As a result, the "creditor's duty to inquire" regime that ATC proposes would create a scenario where a multiplicity of putative unknown creditors, who might generically get some wind of a reorganization, would have to search to see if that reorganization might potentially bar a claim against one or more affiliated entities or subsidiaries. That scenario, replete with wasted effort

and the likelihood of substantial adjudication costs (as parties inevitably would disagree about what constituted sufficient, but imperfect, publication or other notice so as to trigger the creditor's duty to inquire), is hardly an appealing one from a systemic perspective. Moreover, it is not appealing from a practical perspective, particularly when one considers that some unknown creditors, perhaps most, are likely to be small businesses that typically are not experienced or adept at navigating through bankruptcy court files in other parts of the country.

Next, ATC argues that the bankruptcy court's order of July 26, 1999, which directed joint administration of the eight pending Chapter 11 cases, "solely for procedural purposes," provided for a joint caption identifying the group of debtors as "ATC Group Services, Inc." (D.E. 75-6 at 2; *see also* D.E. 100 at 7.) ATC appears to be arguing that through its orders, the bankruptcy court sanctioned the caption used for publication notice pursuant to Rule 2002(m), which states that "[t]he court may from time to time enter orders designating the matters in respect to which, the entity to whom, and the form and manner in which notices shall be sent except as otherwise provided by these rules." Fed. R. Bankr. P. 2002(m). However, the caveat "except as otherwise provided by these rules" indicates that the caption requirements of Rule 1005 and Rule 2002(n) cannot be overridden by a judicial order. Even if the Orders upon which ATC relies can be read as approving of the Notice of Publication, (D.E. 75-7 at 5; D.E. 75-15 at 11), the bankruptcy court's order cannot supercede the requirements of the Bankruptcy Rules. *See also, e.g., In re Hanson*, 397 F.3d at 487 (discussing due process concerns embodied in compliance with the Bankruptcy Rules); *In re Banks*, 299 F.3d at 302 (same).[7]

---

[7] As previously acknowledged, *see* note 5, *supra*, one might argue that language in cases like *In re Banks*, 299 F.3d 296 (4th Cir. 2002)—which might be read to suggest that a violation of a Bankruptcy Rule notice rule itself generally constitutes a constitutional due process

Finally, ATC relies on Bankruptcy Rule 1015, which authorized the administrative

consolidation of the bankruptcy, and which permits bankruptcy courts to "enter orders as may

tend to avoid unnecessary costs and delay." Fed. R. Bankr. P. 1015(c).[8] ATC argues that if

names of all debtors as well as their d/b/a names had to be listed in the publication notice, "costs

would have been prohibitive and would have reduced the amount available for creditors." (D.E.

100 at 8.) It is true that in many instances, a court may take into account the costs that would be

incurred in determining how a bankruptcy should proceed. *See, e.g., In re PL Liquidation Corp.*,

305 B.R. 629, 632 (Bankr. D. Del. 2004) (stating that joint administration of bankruptcy

proceedings under Fed. R. Bankr. P. 1015 "is meant to aid the Court in expediting proceedings

---

violation, *see id.* at 302 ("Where the Bankruptcy Code and Bankruptcy Rules specify the notice required prior to the entry of an order, due process generally entitles a party to receive the notice specified before an order binding the party will be afforded preclusive relief.")—should not be read too literally, given that a violation of a single statutory provision is not normally understood to entail a due process violation of constitutional magnitude. Such a concern, however, does not affect the result here. Even if one made a more typical fact-sensitive assessment of due process concerns familiar to courts for decades under *Mullane v. Central Hanover Bank and Trust*, 339 U.S. 306 (1950), the facts in this case (at least as they must be understood for summary judgment purposes), reflect that: (1) Grand Pier had no basis to suspect or be on notice that the relevant debtors were going through a reorganization under Chapter 11 that might affect their environmental claim; and (2) the debtors provided no meaningful way for Grand Pier to know of their bankruptcy—including, in particular, in the generic publication notice that precedent teaches is often a second-best means of giving notice anyhow.

[8] The debtors' estates in this case were consolidated only for administrative purposes, which is a garden-variety step taken in most, if not virtually all, cases involving corporate reorganizations and multiple related debtors. An "administrative consolidation" in the bankruptcy context is very different from a "substantive consolidation" of the related debtors. In the context of a typical substantive consolidation, the corporate forms of the entities involved are disregarded, assets are pooled into a single pot, and all claims against the debtors proceed against that pot of assets. *See In re Augie/Restive Baking Co.*, Ltd., 860 F.2d 515, 518 (2d Cir. 1988) (Winter, J.); *accord, e.g., In re The Babcock and Wilcox Co.*, 250 F.3d 955, 958 n. 5 (5th Cir. 2001). An "administrative consolidation" is "merely a procedural device used to deal efficiently with multiple estates," and as the name implies, is not supposed to "affect[] the substantive rights of the parties." *Id.*, 250 F.3d at 958 n. 6 (citation omitted).

22

and to make the cases less costly") (citation omitted); *see also Fogel*, 221 F.3d at 963 (stating

that in deciding whether notice by publication is appropriate, the Court may consider the cost of

providing direct notice relative to the amount available for creditors). But ATC offers no support

for the contention that the cost of publishing the additional d/b/a names of the corporate debtors

can outweigh a debtor's duty to comply with the Bankruptcy Rules and due process requirements

vis-a-vis creditors who stand to have property claims extinguished. Instead, Rules 1005 and

2002(n) and the relevant Notes of the Advisory Committee reflect a judgment that the inclusion

of previous d/b/a names on the notices is worth the minimal extra publication cost. Moreover,

even if one assumed *arguendo* that there might be some case-sensitive flexibility in the analysis

for an exception to the publication requirements (notwithstanding that the Bankruptcy Rules and

relevant portions of the Notes of the Advisory Committee do not readily seem to provide such

flexibility), there has been no showing that possibly would justify summary judgment in ATC's

favor on that basis.

In that regard, to the extent the record reflects information relevant to a hypothetically-

available fact-sensitive, practical analysis about whether it is financially prudent to spend money

on including notice of the d/b/a names, the record reflects that this was a *substantial* corporate

reorganization, involving substantial amounts of economic assets and creditor claims. In this

regard, the Court notes that the approved attorney and professional fees in the case appear to have

exceeded $3.5 million alone. (*See* D.E. 75-24 at 2.) The Court takes no quarrel with that figure,

which was subject to disclosure and independent review and approval by the bankruptcy judge.

Nonetheless, the approved fees figure does suggest that this is not a case where one could

reasonably conclude that the estate could not sensibly incur the relatively minimal cost of

23

publishing an additional 25 lines of type in a bar-date disclosure to unknown creditors. In addition, given that the case is at the summary judgment stage, no such showing has conclusively been made, which is what would be required in any event, assuming *arguendo* that such an exception can even be made to the publication disclosure regime prescribed by the Bankruptcy Code and relevant Notes of the Advisory Committee.

Before concluding, the Court addresses two final points. First, in its response brief, Grand Pier argued at some length, in a preemptive fashion, as to why any argument by ATC predicated on a since-superseded version of 11 U.S.C. § 342(c) would be unavailing. (*See* D.E. 96 at 7-9.) ATC had not raised such an argument in its opening brief, and it did not attempt to introduce such an argument in its subsequent briefing. As a result, the Court considers any argument under prior versions of 11 U.S.C. § 342(c) to have been waived; accordingly, the Court will not attempt to speculate about or address an unraised issue. Second, the Court notes that neither party suggests that the only remedy available to Grand Pier should be a late-filed claim against the since reorganized former debtor/former bankruptcy estate, as opposed to this orthodox lawsuit against the reorganized entity. Such an argument would appear to be inconsistent with federal appellate precedent—*see Reliable Electric Co. v. Olson Construction Co.*, 726 F.2d 620, 623 (10th Cir. 1984) (rejecting such an argument)—and, as explained, it was not made in any event. Accordingly, this issue too is waived.

For all of the reasons explained above, ATC's motion for summary judgment is respectfully denied. The record does not reliably command the factual conclusion that Grand Pier was an "unknown creditor" within the meaning of bankruptcy law, and if Grand Pier was a "known creditor," there is no dispute that notice was inadequate. In addition, and independently,

even if Grand Pier could reliably be determined to have been an "unknown creditor," the publication notice that was given was inadequate under the Bankruptcy Rules. Accordingly, summary judgment against Grand Pier is inappropriate.

## CONCLUSION

For the reasons stated above, Defendant's motion for summary judgment (D.E. 73) is respectfully denied. Defendant's motion for imposition of sanctions, *a fortiori*, is denied as well.

Mark Filip
United States District Judge
Northern District of Illinois

Dated: *October 9, 2007*