IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| GRAND PIER CENTER LLC and | ) | |
| AMERICAN INTERNATIONAL | ) | |
| SPECIALTY LINES INSURANCE CO. | ) | |
| as subrogee of Grand Pier Center LLC, | ) | Civil Action No.: 03 C 7767 |
| | ) | |
| Plaintiffs, | ) | Suzanne B. Conlon, Judge |
| | ) | |
| v. | ) | |
| | ) | |
| TRONOX, LLC, RIVER EAST LLC, | ) | |
| CHICAGO DOCK AND CANAL TRUST, and | ) | |
| CHICAGO DOCK AND CANAL COMPANY, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Grand Pier Center LLC ("Grand Pier") and its subrogee, American International Specialty

Lines Insurance Company (collectively, "plaintiffs") sue Tronox, LLC ("Tronox") (f/k/a Kerr-

McGee Chemical LLC) under the Comprehensive Environmental Response, Compensation, and

Liability Act ("CERCLA"), 42 U.S.C. §§ 9607 & 9613 (Counts I-III). Plaintiffs also sue Tronox

for strict liability (Count IV), negligence (Count V), and contribution under the Illinois Joint

Tortfeasor Contribution Act (Illinois Contribution Act), 740 ILCS 100/1, *et seq.* (Count VI).

Plaintiffs claim Tronox's predecessor Lindsay Light Company ("Lindsay Light") disposed of

hazardous thorium onto property Grand Pier later purchased in 1997. Tronox moves for

summary judgment on the state law claims. For the reasons set forth below, the motion is

granted in part and denied in part.

## I.      Local Rule 56.1

Local Rule 56.1 requires litigants to follow a detailed procedure in filing and responding

to summary judgment motions.  The movant must submit a statement of material facts, not to

exceed 80, consisting of short, numbered paragraphs, including with each paragraph specific

references to the affidavits, parts of the record, and other supporting materials relied upon.  Local

Rule 56.1(a)(3).  The opposing party must respond to each numbered paragraph in the movant's

statement including, in the case of disagreement, specific references to the affidavits, parts of the

record, and other supporting materials relied upon.  Local Rule 56.1(b)(3).  The opposing party

must also submit a statement of any supplemental material facts, not to exceed 40, that require

summary judgment denial.  Local Rule 56.1(b)(3)(C).  Grand Pier violates these rules by filing

53 supplemental facts.  Grand Pier's supplemental facts numbers 41-53 and the exhibits

referenced therein are stricken, and will not be considered.

## II.     Background

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits.

From 1915 to 1932, Lindsay Light manufactured gaslight mantles from thorium in two locations

in the Streeterville area of Chicago, Illinois.  At the time, Streeterville was an industrial area of

factories, warehouses, stables, and docks, although two blocks east of Michigan Avenue.  Def.

Ex. B, 1906 and 1927 Sanborn Fire Insurance Maps of Streeterville.

Thorium is a radioactive element bearing a half-life of 14 billion years.  Pl. Ex. 7, Chris

Whipple Expert Report at 3-4.  It is a hazardous substance according to CERCLA.  *Id.* at 6; 40

C.F.R. § 302.4.  The danger that exposure to high levels of radiation posed to human health was

2

established by the 1915-1932 time period (Whipple Report at 6), but there were no regulatory standards or limits for exposure to radiation (Def. Ex. N, Whipple Dep. Tr. at 115, 118).

Lindsay Light extracted thorium from imported monazite sand. Pl. Ex. 5, Stewart Logan (Tronox's 30(b)(6) Witness) Dep. Tr. at 35-39. A ton of monazite sand yielded approximately 240 pounds of thorium. *Id.* at 63. Corporate minutes from 1920 reflect Lindsay Light at one point held 31,860 pounds of thorium in its inventory. Pl. Ex. 21, July 20, 1920 Lindsay Light Board Minutes at 2.

Lindsay Light used an acid stripping process to extract thorium from the sand, producing radioactive waste called mill tailings. Logan Dep. Tr. at 35-39, 156. Mill tailings are grey, and their texture is similar to a fine sand. Pl. Ex. 4, Mark Krippel (Tronox employee) Dep. Tr. at 41. Grand Pier argues Lindsay Light disposed of mill tailings by dumping them on its own and neighboring Streeterville properties. It is undisputed that when Lindsay Light moved its operations to West Chicago, Illinois in 1932, it disposed of mill tailings in open air piles on the ground and in lagoons on its West Chicago property. *Id.*; Logan Dep. Tr. at 94-95, 112-113, 117-118. Tronox's corporate representative testified he had no basis to dispute that Lindsay Light used the same procedure at its Streeterville locations. Logan Dep. Tr. at 95, 97-98.

A manufacturer's disposal of waste materials in this manner was common at the time. Def. Ex. M, John Weaver Rebuttal Expert Report at 5. Lindsay Light was the only gaslight mantle manufacturer and thorium generator in Streeterville. Logan Dep. Tr. at 187-88. Mill tailings have been found at more than ten Streeterville properties. Pl. Ex. 24, November 22, 2006 City of Chicago Streeterville Thorium Investigation Map.

3

In October 1997, Grand Pier purchased property between Lindsay Light's two former Streeterville sites. Grand Pier intended to develop the property into a hotel, condominiums, and retail stores. After Grand Pier began to excavate the site, thorium was discovered in the soil. A soil sample at the Grand Pier site measured thorium contamination at 244 times higher than the United States Environmental Protection Agency's ("EPA") established cleanup criterion. Whipple Report at 11; Pl. Ex. 16, March 28, 2000 USEPA Action Memorandum at 1, 4-5. At the point of highest exposure at the Grand Pier site, within 20 hours a person would have received above recommended exposure limit for a year. Whipple Report at 11; USEPA Action Memorandum at 4. The EPA ordered Grand Pier to halt excavation, and directed Grand Pier, Kerr-McGee Chemical LLC (k/n/a Tronox and the successor in interest to Lindsay Light), and River East Chicago LLC (the successor in interest to the Grand Pier site owner during the 1915-1932 time period) to remove the thorium-containing soil. The remediation was complete by November 2000; Grand Pier contends the time and money it expended to remediate caused the project's failure.

## DISCUSSION

### I.    Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party has the initial burden of demonstrating that it is entitled to summary judgment." *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (citing *Celotex Corp.*, 477 U.S. at

4

323). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II.    Strict Liability (Count IV)

Tronox argues it cannot be strictly liable to Grand Pier because Lindsay Light's disposal of mill tailings on its own and neighboring properties is not an abnormally dangerous activity as a matter of law. A defendant who performs an abnormally dangerous activity is strictly liable for damages resulting from the activity. The liability arises out of the abnormal danger of the activity itself, and the risk of harm it creates to those in the vicinity. *Ind. Harbor Belt RR Co. v. Am. Cyanamid Co.*, 916 F.2d 1174, 1176-78 (7th Cir. 1990); *In re Chicago Flood Litig.*, 680 N.E.2d 265, 279 (Ill. 1997).

Tronox disputes that Lindsay Light disposed of mill tailings on the Streeterville property. However, the common practice at the time was to simply dispose of waste materials "out back." Indeed, it is undisputed Lindsay Light disposed of mill tailings on its West Chicago property, and Tronox presents no evidence the procedure was any different in Streeterville. Mill tailings were found in Streeterville, where Lindsay Light was the only thorium generator. Considering the evidence in Grand Pier's favor, a reasonable inference may be drawn that Lindsay Light disposed of mill tailings on the Streeterville properties.

5

Tronox argues this was not abnormally dangerous because it happened a long time ago, when the government did not regulate thorium production and radioactive tailing disposal. Tronox argues Lindsay Light's activity should be analyzed from a 1915-1932 perspective. The only authority Tronox cites is a law review article criticizing a New Jersey Supreme Court decision, which held that a company's processing of radium and the disposal of its waste product on vacant property in an urban setting between 1917 and 1926 was an abnormally dangerous activity. Christine M. Beggs, *As Time Goes By: The Effect of Knowledge and the Passage of Time on the Abnormally Dangerous Activity Doctrine*, 21 HOFSTRA L. REV. 205 (1992) (discussing *T&E Indus., Inc. v. Safety Light Corp.*, 587 A.2d 1249 (N.J. 1991)). This article is not binding on the issue of strict liability for an abnormally dangerous activity. Tronox is not entitled to summary judgment even viewing Lindsay Light's radioactive tailing disposal in historical context.

The proper analysis of a claimed abnormally dangerous activity involves consideration of the factors set forth in Section 520 of the Restatement (Second) of Torts: existence of a high degree of risk of harm to the person or land; the likelihood resulting harm will be great; inability to eliminate the risk through reasonable care; extent to which the activity is not a matter of common usage; inappropriateness of the activity to the place where it is carried on; and the extent to which the activity's dangerousness outweighs its value to the community. *Ind. Harbor Belt RR Co.*, 916 F.2d at 1176; *In re Chicago Flood Litig.*, 680 N.E.2d at 279.

Viewing the evidence in the light most favorable to Grand Pier, there is a genuine issue of material fact whether the disposal of the radioactive mill tailings on the Streeterville property posed a significant risk of harm to the health of people living or working nearby. Tronox cites

admission of an expert that low levels of radiation exposure pose only a remote risk of illness. Whipple Dep. Tr. at 96-97. But the exposure at the Grand Pier site was a thousand times higher than the hypothetical low level amount. *Id.* at 97. It is undisputed that at least one soil sample revealed a thorium concentration level far surpassing EPA standards. The volume of thorium Lindsay Light produced, and thorium's half-life of 14 billion years, buttress the risk of harm from Lindsay Light's activities.

In contrast with its argument that strict liability should be analyzed from a 1915-1932 perspective, Tronox argues that the risk of harm from radioactive mill tailings may presently be eliminated by reasonable care, and therefore Lindsay Light's activities were not abnormally dangerous. If the hazards from an activity can be prevented by being careful, strict liability is not necessary; negligence would be the appropriate cause of action. *Ind. Harbor Belt RR Co.*, 916 F.2d at 1177. Tronox likens this case to decisions rejecting strict liability for manufacturing, transportation, and disposal of hazardous chemicals where the harm from the activities could have been eliminated through reasonable care. *See, e.g., City of Bloomington v. Westinghouse Elec. Corp.*, 891 F.2d 611, 615-17 (7th Cir. 1989) (PCB manufacturer not strictly liable for landfill and sewer system contamination because buyer failed to safeguard PCB disposal); *Ind. Harbor Belt RR Co.*, 916 F.2d at 1179-81 (acrylonitrile manufacturer that shipped the chemical in a railroad tank car through a populated metropolitan area not strictly liable for soil and water contamination from a spill because it could have been prevented by careful maintenance of the tank car).

The abnormally dangerous activity is Lindsay Light's disposal of radioactive waste on the Streeterville properties, not merely thorium production. Tronox fails to present any supporting

7

evidence or argument regarding the present ability to eliminate health risks from thorium disposal. There is no evidence of any disposal facilities for mill tailings during the 1915-1932 time period.

Streeterville today, of course, is heavily populated. But even during the early time period, the Grand Pier site was located in the second largest city in the nation, just a few blocks from Michigan Avenue, a main thoroughfare. A genuine issue of material fact exists as to whether Lindsay Light's disposal of radioactive waste on the Streeterville property, though a common practice, was abnormally dangerous. Tronox argues Lindsay Light provided value to the community by providing gas mantles, an alternative to light bulbs in a world before widespread electricity. Yet Tronox does not dispute electricity's emergence at the time and the competition it posed to gas mantles. Pl. Ex. 3, United States Tariff Commission Report at 21. The value of gas mantles, even in the early 1900s, is therefore not conclusive.

Summary judgment on Grand Pier's strict liability claim is not appropriate because there are genuine issues of material fact regarding whether Lindsay Light's thorium waste disposal was abnormally dangerous.

## III.    Negligence (Count V)

Tronox argues Grand Pier's injuries were neither foreseeable nor likely at the time Lindsay Light disposed of mill tailings, and that Lindsay Light therefore owed no duty of care. *See Curatola v. Village of Niles*, 608 N.E.2d 882, 888 (Ill. 1993) (discussing factors to consider in determining the existence of a duty for a negligence claim). Tronox argues the undisputed common practice of waste disposal on a manufacturer's property during the relevant time period establishes that Grand Pier's remediation costs and the failure of its development project were

8

not foreseeable or likely. The commonality of conduct, however, is not determinative of whether injuries from the conduct are foreseeable or likely. Tronox does not refute that the health dangers from high levels of radiation were established at the time, or that thorium has a half-life of 14 billion years. Yet a reasonable inference may be drawn that Lindsay Light disposed of radioactive mill tailings from at least over a hundred tons of monazite sand, on its and neighboring Streeterville properties. There are genuine issues of material fact regarding the foreseeability and likelihood of Grand Pier's injuries. Summary judgment in favor of Tronox on Grand Pier's negligence claim is not warranted.

## IV. Contribution (Count VI)

Tronox argues Grand Pier cannot recover under the Illinois Contribution Act because the statute applies only to causes of action arising on or after March 1, 1978. 740 ILCS 100/1. Lindsay Light's alleged improper disposal of mill tailings, however, occurred between 1915 and 1932. But Grand Pier argues Kerr-McGee's post-1978 conduct regarding the Grand Pier site entitles it to state law contribution. This conduct centers on Kerr-McGee's surveying and sampling in West Chicago, but failing to do so in Streeterville despite a purported EPA order. Grand Pier relies on material stricken for violating Local Rule 56.1's limit of 40 supplemental facts. And Grand Pier did not plead this theory in its second amended complaint. *See Speer v. Rand McNally & Co.*, 123 F.3d 658, 665 (7th Cir. 1997) (a plaintiff may not amend his complaint through arguments in a brief opposing summary judgment). Grand Pier fails to present any genuine issue of material fact to preclude summary judgment in Tronox's favor on the Illinois Contribution Act count. Tronox's argument that CERCLA preempts Grand Pier's state contribution claim need not be addressed. Tronox argues, without any legal argument or

9

analysis in its opening brief, that CERCLA also preempts Grand Pier's negligence and strict liability claims. This argument is waived. *See Kelso v. Bayer Corp.*, 398 F.3d 640, 643 (7th Cir. 2005).

## V.    Economic Loss Doctrine

Tronox argues Grand Pier's strict liability and negligence claims are barred by the economic loss doctrine, which precludes the recovery in tort of purely economic losses. *Moorman Mfg. Co. v. Nat'l Tank Co.*, 435 N.E.2d 443, 453 (Ill. 1982). Economic loss is defined as damages for inadequate value, costs of repair and replacement of a defective product, or consequent loss of profits, without any personal injury or property damage claim. *In re Chicago Flood Lit.*, 680 N.E.2d at 274. Contract law provides the proper remedy for disappointed commercial expectations. *Moorman Mfg. Co.,* 435 N.E.2d at 450. Tronox contends Grand Pier's state law claims seek to recover losses for disappointed commercial expectations in the form of remediation costs and economic loss from the failure of the Grand Pier renovation project.

The economic loss doctrine does not apply if damages are caused by a sudden, calamitous, or dangerous occurrence. *American United Logistics, Inc. v. Catellus Dev. Corp.*, 319 F.3d 921, 927 (7th Cir. 2003); *In re Chicago Flood Lit.*, 680 N.E.2d at 275. This exception generally does not apply in contamination cases unless the contamination poses a health risk. *American United Logistics*, 319 F.3d at 927-28 (collecting cases). Viewing the evidence in the light most favorable to Grand Pier, radioactive waste contamination presents significant health risks and therefore falls within the exception. The economic loss doctrine does not entitle Tronox to summary judgment on Grand Pier's strict liability and negligence claims.

10

## CONCLUSION

Tronox's partial summary judgment motion is granted on Count VI (Illinois Contribution Act) because Lindsay Light's disposal of mill tailings occurred before the statute's application date. The motion is denied on Count IV (strict liability) because genuine issues of material fact are raised regarding the abnormally dangerous nature of Lindsay Light's disposal practices. The motion is denied on Count V (negligence) because of genuine issues of material fact as to the foreseeability and likelihood of Grand Pier's injuries. The economic loss doctrine does not warrant summary judgment on Tronox's remaining state law claims.

ENTER:

Suzanne B. Conlon
United States District Judge

October 31, 2008

11