IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| GRAND PIER CENTER LLC and <br> AMERICAN INTERNATIONAL <br> SPECIALTY LINES INSURANCE CO. <br> as subrogee of Grand Pier Center LLC, <br><br> Plaintiffs, <br><br> v. <br><br> ATC GROUP SERVICES, INC., <br><br> Defendant. | Civil Action No.: 05 C 1156 <br> No.: 03 C 7767 (cons.) <br><br> Suzanne B. Conlon, Judge |

## MEMORANDUM OPINION AND ORDER

Grand Pier Center LLC ("Grand Pier") and its subrogee, American International Specialty Lines Insurance Company (collectively, "plaintiffs") sue ATC Group Services, Inc. ("ATC") for negligent misrepresentation and negligence. Plaintiffs claim ATC failed to investigate and disclose radioactive thorium contamination of property Grand Pier purchased in 1997. ATC moves for summary judgment. For the reasons set forth below, the motion is granted in part and denied in part.

## BACKGROUND

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits, and are undisputed unless otherwise noted. Grand Pier was formed to purchase property in the Streeterville area of Chicago, Illinois and develop a hotel, condominiums, and retail stores. Raymond Chin was a principal of R.M. Chin and Associates, Inc. ("RMC"), and the managing

member of Grand Pier. In August 1997, RMC hired ATC to conduct a phase I environmental site assessment. ATC Ex. 3, August 8, 1997 Smith Technology Corporation (ATC's predecessor) Proposal. The scope of the work included identifying adjacent properties and their potential for causing adverse environmental conditions. *Id.* ATC's focus was to identify hazardous materials, wastes, or activities at the site and nearby facilities. ATC Ex. 7, September 3, 1997 Phase I Report at 1.

ATC reported that neighboring property called "Lindsay Light II" was reflected in the Comprehensive Environmental Response, Compensation, and Liability Information System ("CERCLIS"). *Id.* at 2. But ATC stated information from the United States Environmental Protection Agency ("EPA") indicated that removal action was completed March 13, 1996. *Id.* at 2. ATC recommended soil and groudwater sampling. *Id.* at 3.

In September 1997, RMC extended ATC's engagement to include a phase II subsurface investigation of the Grand Pier site. ATC Ex. 4, September 4, 1997 ATC Proposal. The objective was to evaluate the property's subsurface conditions to assess any soil or groundwater impact from previous use. *Id.* at 1. On or about September 10, 1997, ATC employee Michael Widera reported to Michael Hays, ATC project manager for the Grand Pier site, that there were "radiation issues in that area" and a question about "uranium processing in that area in the past." Grand Pier Ex. 20, Hays Notation to File; Grand Pier Ex. 21, Hays Dep. Tr. at 74-76. Chin testified no one at ATC disclosed this information to RMC. Grand Pier Ex. 22, Chin Dep. Tr. at 363-64. Hays, in contrast, testified he believes he told Chin the information, but could not "for sure, say that I did." Hays Dep. Tr. at 80-82.

In the phase II report, ATC noted the presence of volatile and semi-volatile organic compounds in the soil, and stated they did not pose an environmental or health threat. ATC Ex. 11, September 29, 1997 Phase II Report at 5. ATC reported it chose the location of one soil boring in an effort to evaluate the conditions on site in proximity to the CERCLIS/Lindsay Light II site previously identified. *Id.* at 1. On September 30, 1997, ATC granted Grand Pier permission to review and use the information provided in the phase II report. ATC Ex. 17, September 30, 1997 Hays/Chin Correspondence. Grand Pier purchased the property in October 1997.

A year and a half later, RMC retained ATC to update the phase I report. ATC Ex. 5, April 26, 1999 ATC Proposal at 1-2. The scope of services was designed to evaluate contamination potential from on-site or off-site sources and evaluate current and historical conditions at the site and surrounding area. *Id.* ATC reported that a gaslight mantle manufacturer that used radioactive thorium formerly occupied the neighboring Lindsay Light II site. ATC Ex. 13, April 30, 1999 Updated Phase I Report at 3. ATC reported elevated radiation levels were found at the Lindsay Light II site, and remediation occurred in 1994 and 1996. *Id.* ATC stated that regulatory agencies were monitoring the Lindsay Light II site and, therefore, it was a low potential environmental concern warranting no further investigation. *Id.* at 3-4, 8. The updated phase I report stated it was intended for the sole use of RMC and could not be used or relied upon by another party without ATC's written consent. *Id.* at 8505.

The EPA later discovered thorium contamination at the Grand Pier site in levels posing an imminent and substantial endangerment to public health and the environment. Over 10,000 tons of radioactive contaminated soil had to be removed from the Grand Pier site. Grand Pier

3

contends its development project failed because of the thorium contamination and ATC's failure to investigate and disclose this condition.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The moving party has the initial burden of demonstrating that it is entitled to summary judgment." *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (citing *Celotex Corp.*, 477 U.S. at 323). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). A genuine issue of material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### II. Negligent Misrepresentation

ATC argues the phase I and phase II reports do not contain any false statements of material fact or omissions of material fact. The elements of a negligent misrepresentation claim are a duty to communicate accurate information; a false statement of material fact or an omission of material fact; carelessness or negligence in ascertaining the truth or falsity of the statement;

4

an intention to induce the other party to act; an action in reliance on the false statement; and resulting damages. *First Midwest Bank N.A. v. Stewart Title Guar. Co.*, 843 N.E.2d 327, 332 (Ill. 2006). A duty to communicate accurate information is implied in situations where one is in the business of supplying information for the guidance of others in their business transactions. *Greycas, Inc. v. Proud*, 826 F.2d 1560, 1565 (7th Cir. 1987); *First Midwest Bank*, 843 N.E.2d at 332.

ATC argues the contract terms, not common law duties to communicate accurate information and use reasonable care, govern Grand Pier's claims. *See Ferentchak v. Vill. of Frankfort*, 475 N.E.2d 822, 825-26 (Ill. 1985). This argument ignores ATC's overlapping obligations under the contracts to evaluate contamination potential and historical conditions at the site and surrounding area, identify hazardous wastes at the site and nearby facilities, and evaluate the property's subsurface conditions to assess any soil or groundwater impact from previous use. Resolution of Grand Pier's claims, therefore, does not hinge on whether the duty is labeled common law or contractual.

In the phase I report, ATC identified Lindsay Light II as a CERCLIS site but reported remediation was completed the prior year. This was false, as the parties later discovered. Viewing the evidence in the light most favorable to Grand Pier, the purported completed remediation was material. Indeed, ATC was hired to assess the property's environmental condition, and Chin testified he would have requested additional investigation had he known the remediation was not completed. Chin Dep. Tr. at 360-62.

ATC argues it relied on a third-party provider's report for this information, as the American Society for Testing and Materials ("ASTM") Standards entitle it to do. ATC Ex. 16,

ASTM Standards for Phase I Environmental Site Assessments at § 7.1.7. Grand Pier contends this provision merely provides that records may be *obtained* from third parties. Regardless, it is undisputed that within days of the phase I report, the ATC project manager for the Grand Pier site learned of radiation issues in the area but did not revise the phase I report. Hays Notation to File; Hays Dep. Tr. at 74-76. The parties dispute whether ATC disclosed the information to RMC. Chin Dep. Tr. at 363-64; Hays Dep. Tr. at 80-82. Chin testified that he would have required additional investigation had he known of the radiation issues. Chin Dep. Tr. at 363-64.

ATC dismisses the information and argues it was entitled to rely on the third-party provider rather than vague, unsubstantiated statements of unknown third parties. But a long-time ATC employee, not an unknown third party, reported the information to Hays. Hays Dep. Tr. at 72-76. And Hays recorded the information in his project file. Hays Notation to File; Hays Dep. Tr. at 74-76. Viewing the evidence in the light most favorable to Grand Pier, there is a genuine issue of material fact whether ATC negligently misrepresented the environmental condition of the Grand Pier site in its phase I report.

ATC issued its phase II report within a month, but failed to include information regarding radiation. ATC argues the phase II report was limited to investigating the soil and groundwater for the presence of volatile and semi-volatile organic compounds and priority pollutant metals. This does not include thorium. September 4, 1997 ATC Proposal at 2. But ATC ignores its stated objective to evaluate the property's subsurface conditions to assess any soil or groundwater impact from previous use. *Id.* at 1. In the phase II report, ATC stated it strategically placed a soil boring near the CERCLIS/Lindsay Light II site. September 29, 1997 Phase II Report at 1. A reasonable inference may be drawn that this placement was to test for radiation in the soil or

6

groundwater because of information ATC possessed concerning that issue. ACT never sampled for any radioactive waste, but the EPA later discovered over 10,000 tons. Viewing the evidence in the light most favorable to Grand Pier, ATC misrepresented its investigation of Lindsay Light II's impact on the Grand Pier site.

ATC argues Grand Pier did not reasonably rely on the updated phase I report because the report explicitly prohibited reliance by anyone but RMC, unless ATC provided written consent. April 30, 1999 Updated Phase I Report at 8505. Grand Pier responds ATC cannot escape liability by virtue of the limitation provision because it owed a duty to Grand Pier. Grand Pier conflates duty and justifiable reliance. To establish negligent misrepresentation, Grand Pier must show its reliance was justified, and that it had a right to rely on the updated phase I report. *See Gerill Corp. v. Jack L. Hargrove Builders, Inc.*, 538 N.E.2d 530, 536 (Ill. 1989); *Kopley Group V., L.P. v. Sheridan Edgewater Properties, Ltd.*, 876 N.E.2d 218, 229 (Ill. App. Ct. 2007). The limitation provision precluded Grand Pier's reliance. ATC gave Grand Pier permission to use the phase II report. But it is undisputed that Grand Pier never obtained a waiver of the updated phase I report's limitation provision. Grand Pier argues the updated phase I report was part and parcel of the other reports, and permission to rely on one report constituted permission to rely on all reports. Grand Pier provides no evidence or authority for this proposition, and the language of the reports does not support this argument. Grand Pier presents no genuine issue of material fact that it justifiably relied on the updated phase I report.

### III. Negligence

ATC argues the phase I and phase II reports do not contain any false statements of material fact or omissions of material fact, and therefore ATC did not breach its duty to Grand

7

Pier. *See Wojdyla v. City of Park Ridge*, 592 N.E.2d 1098, 1100 (Ill. 1992) (defining elements of a negligence action). As discussed, there are genuine issues of material fact as to whether ATC falsely stated or omitted material facts in the phase I and phase II reports.

ATC argues it did not owe Grand Pier a duty with respect to the updated phase I report because Grand Pier was not a foreseeable user of the report. It is undisputed that only RMC could rely on the updated phase I report, unless ATC consented; Grand Pier did not obtain permission to view or use the report, unlike the phase II report. Grand Pier presents no genuine issues of material fact that it was a foreseeable user of the updated phase I report. Accordingly, as a matter of law, ATC did not owe Grand Pier a duty with respect to the updated phase I report.

## CONCLUSION

ATC's motion for summary judgment on the negligent misrepresentation and negligence counts is denied with respect to the phase I and phase II reports because there are genuine issues of material fact as to ATC's false statement or omission of material facts. ATC's motion for summary judgment on the negligent misrepresentation and negligence counts is granted with respect to the updated phase I report. Grand Pier presents no genuine issue of material fact that it justifiably relied on the updated phase I report, or that it was a foreseeable user of that report.

ENTER:

Suzanne B. Conlon
United States District Judge

November 14, 2008

8